[S. F. No. 16506.   In Bank.—June 18, 1941.]

ASBURY RAPID TRANSIT SYSTEM (a Corporation), Petitioner, v. THE RAILROAD COMMISSION et al., Respondents.

[S. F. No. 16507.   In Bank.—June 18, 1941.]

CITY OF LOS ANGELES (a Municipal Corporation), Petitioner, v. THE RAILROAD COMMISSION, Respondent.

Bart F. Wade, Rodney F. Williams, Ware & Berol, Wallace L. Ware and DeWitt M. Manning for Petitioner in S. F. No. 16506.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Bourke Jones, Deputy City Attorney, for Petitioner in S. F. No. 16507.

Ira H. Rowell, Roderick B. Cassidy, George E. Howard, Gibson, Dunn & Crutcher, S. M. Haskins, Woodward M. Taylor, Max Eddy Utt, Frank Karr and C. W. Cornell for Respondents.

SHENK, J.—Asbury Rapid Transit System, a corporation, and City of Los Angeles filed separate petitions to review and annul an order of the Railroad Commission requiring the petitioner, Asbury Rapid Transit System, to cease and desist from certain operations as a common carrier of passengers by motor transportation until it should have obtained a certificate of public convenience and necessity. The issues presented by both petitions and the return to the writ of review issued herein were consolidated for argument and decision.

It appears that in December, 1939, Asbury Rapid Transit System operated several lines of motor vehicle passenger service between Los Angeles and other cities and adjoining unincorporated territory in Los Angeles County as a certificated carrier under the supervision and regulation of the Railroad Commission, pursuant to the Public Utilities Act. During that month and without obtaining a certificate of public convenience and necessity, it inaugurated and began the operation of an additional motor vehicle common carrier passenger service between the downtown and the Highland Park and Garvanza sections of the city of Los Angeles, terminating at a point two blocks within the city limits, and without any transfer privileges to or from any of its other lines. For convenience this additional service is called the Highland Park line. The operation of that line was commenced and conducted pursuant to a permit granted by order of the Board of Public Utilities and Transportation of the city of Los Angeles dated July 14, 1939. Before the commencement of the operation of the Highland Park line and on October 18, 1939, and thereafter in March, 1940, two competing lines, Los Angeles Railway Corporation and Pacific Electric Railway Company, filed complaints before the Railroad Commission protesting the operation by the Asbury Rapid Transit System of its Highland Park line without first obtaining a certificate of public convenience and necessity. The competing companies serve in part the same territory as the Highland Park line, and the Highland Park line also paral-

lels portions of the service afforded by other lines operated by the Asbury Rapid Transit System. Hearings were had before the commission, which issued its order directing the Asbury System to cease and desist from operating its Highland Park line until it obtained a certificate of public convenience and necessity.

It is contended by the petitioners that the commission has misconstrued and misapplied sections 2¼ (b) and 50¼ of the Public Utilities Act [Deering's Gen. Laws, 1937, Act 6386], and that it has exceeded its powers by taking jurisdiction of a purely intra-city passenger transportation service.

In the cases of *Los Angeles Ry. Corp.* v. *City of Los Angeles,* 16 Cal. (2d) 779 [108 Pac. (2d) 430], and *Bay Cities Transit Co.* v. *City of Los Angeles,* 16 Cal. (2d) 772 [108 Pac. (2d) 435], we were called upon to determine the jurisdiction of the Railroad Commission over passenger transportation companies operating lines partly within and partly without an incorporated city. ▆▆▆ We are now to consider whether the jurisdiction of the commission extends to a separate intra-city passenger service afforded by a carrier which also furnishes inter-city passenger service on other lines owned by the same corporation.

Section 50¼ of the Public Utilities Act was added in 1927 (Stats. 1927, p. 72). It provides that no "passenger stage corporation" shall operate any passenger stage over any public highway in the state without first having obtained from the Railroad Commission a certificate that public convenience and necessity require such operation. Subsection (b) of section 2¼ of the act, also added in 1927, defines "passenger stage corporation." Its pertinent portion reads: "The term 'passenger stage corporation' . . . includes every corporation . . . engaged as a common carrier for compensation, in the ownership, control, operation or management of any passenger stage over any public highway in this state between fixed termini or over a regular route . . . ; provided, however, that this term shall not include those whose operations are exclusively within the limits of a single incorporated city. . . . "

The commission construed the language of said section 2¼ (b) as expressing an intent to exclude the operation of said Highland Park line by the Asbury Rapid Transit Sys-

tem from the jurisdiction of the commission only if all the operations of its entire system were conducted within the territorial confines of the city of Los Angeles. The petitioners contend that the word "operations", contained in said subsection, refers to the operations of any separate intra-city service, although such operations may be conducted by a corporation owning and operating a system also furnishing services which are subject to the jurisdiction of the Railroad Commission. They assert that incongruities would result from the construction adopted by the commission. They say, for example, that the operation by one owner of two widely separated strictly intra-city services would become subject to the jurisdiction of the commission because such operations were not confined to a single incorporated city. Whether those or other operations, by reason of identity of ownership, could be regulated through the medium of the Railroad Commission under appropriate legislation need not now be considered. In any event, we may not refuse to apply the plain and unambiguous language of the statute to facts and circumstances which obviously were intended to be covered thereby. Pursuant to the plenary power vested in the legislature by section 23, article XII of the Constitution, it could properly consider that all of the operations of a passenger stage corporation were subject to the jurisdiction of the Railroad Commission where, as in this case, some of its operations as a passenger transportation corporation were subject thereto. In the case of *Los Angeles Ry. Corp.* v. *City of Los Angeles, supra,* it was held that when a part only of the operations of a common carrier was within an incorporated city, the public interest required that the entire operations of the carrier be subject to regulation and supervision by the Railroad Commission; that in such a case the portion of its operations which was within the city ceased to be strictly municipal in character and was affected with a larger public interest. The holding in that case is applicable here. The fact that the intra-city portion of the operations is separate from the inter-city operations of the system presents no valid ground for distinction. The financial and other responsibilities of the entire system and its duties and obligations to the public may become and in fact were found by the commission to be affected by the intra-city operations. A reasonable restriction on competition in its intra-city as well

as its inter-city operations may well be required if a responsible financial structure of the entire system is to be established and maintained. Under its plenary power the legislature had the right to foresee and provide against any ineffective regulation which might ensue if the operations of such transportation companies were not brought under the jurisdiction of the Railroad Commission.

██ The showing that more than a municipal interest attaches to the activities of a company conducting passenger operations of both an inter-city and intra-city character, including the intra-city operations of the petitioning system in this case, is a sufficient answer to the contention that the constitutional rights of the petitioners have been violated. It is not unreasonable for the legislature to classify separately for the purposes of commission regulation corporations conducting both intra-city and inter-city operations, and thereby exempt from such regulation those conducting only intra-city operations. Such a classification does not violate the city's, constitutional rights to exercise autonomous rule in municipal affairs.

██ A further indication that the legislature intended the jurisdiction of the commission to extend over the intra-city operations of a passenger stage corporation in a case such as is now before us, is disclosed by the changes in the language of section 2¼ (b) of the Public Utilities Act adopted in 1927, when considered in the light of prior legislation. Before 1927, passenger stage transportation companies were certificated and regulated by the Railroad Commission under the provisions of the Auto Stage and Truck Transportation Act. Section 1 (c) of that act (Stats. 1917, p. 330 [Deering's Gen. Laws, 1923, Act 5129]), defined the term "transportation company" as every corporation or person owning or operating any auto bus, stage or truck used in the business of transporting persons or property over any public highway in the state between fixed termini or over a regular route "and not operating exclusively within the limits of an incorporated city." Section 5 of that act provided, however, that no certificate should be required for operations exclusively within the limits of an incorporated city . . . By the 1927 enactment the legislature, in transferring passenger stage corporations to the commission's jurisdiction under the Public Utilities Act, substantially altered the lan-

guage last above quoted to exempt "those whose operations are exclusively within the limits of a single incorporated city." It is also to be noted that by adding sections 2¾ and 50¾ to the Public Utilities Act in 1935 (Stats. 1935, p. 1830), the legislature transferred from the Auto Truck and Transportation Act to the Public Utilities Act the commission's regulation of common carriers of property by motor truck without any change in the provision exempting "operations exclusively within the limits of an incorporated city." (Sec. 50¾ (c).) The studied alteration in the wording of the provision relating to passenger stage corporations as it was embodied in subsection (b) of section 2¼ of the Public Utilities Act is a plain indication of the purpose of the legislature to provide a substantive change, and in accordance with the construction placed thereon by the Railroad Commission. We are not, of course, passing upon the construction of any language not directly involved herein.

Other points do not require discussion.

We conclude that the respondent commission properly construed and applied the provisions of the Public Utilities Act to the facts presented and that it has regularly pursued its authority.

The order is affirmed.

Curtis, J., Traynor, J., Gibson, C. J., Edmonds, J., and Carter, J., concurred.