### ZEPHYR OIL CO. v. CUNNINGHAM.

#### No. 15479.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 29, 1954.

Rehearing Denied Feb. 26, 1954.

Bullington, Humphrey, Humphrey & Fillmore, and Lee Humphrey, Wichita Falls, for appellant.

Nelson, Montgomery, Robertson & Sellers and Stayton M. Bonner, Wichita Falls, for appellee.

MASSEY, Chief Justice.

Joe P. Cunningham, as plaintiff, brought suit against Zephyr Oil Company to construe and enforce an assignment of an oil and gas lease in which he was the grantor, in the alternative suing for reformation of such assignment and for its enforcement as reformed. The enforcement sought was against the grantee for a proportion of such defendant's collection of money for gas marketed from the leased property. The trial court reformed the contract and rendered judgment for plaintiff for a proportion of such gas payments on the theory that title to such proportion of the gas was not conveyed by the intended contract of the parties thereto. Defendant appealed.

Judgment affirmed.

Joe P. Cunningham, prior to May 29, 1947, was the owner of an oil and gas mining lease on 52.5 acres of land in Rusk County, Texas. A person not involved in this suit owned the royalty interest. On May 29, 1947, Cunningham executed an assignment of said oil and gas lease to the Zephyr Oil Company, transferring and conveying to the Zephyr Oil Company all his right, title and interest under said lease subject to provision regarding commencement of the drilling of a well upon the leased property and subject further to a provision in the assignment reading as follows: "It being understood however that the assignor herein reserves to himself an overriding royalty of ⅟₁₆th of ⅞th and the assignee shall deliver to the credit of the assignor as royalty, free of costs, in the pipe line to which it may connect its wells the equal ⅟₁₆th part of all oil produced and saved from the lease premises."

The execution of the assignment instrument followed several oral discussions and exchanges of writings between Mr. Cunningham and S. J. Taylor, President of the Zephyr Oil Company.

Subsequently a well producing both oil and gas was brought in by the Zephyr Oil Company on the lease premises. The Oil Company conducted its affairs so that Cunningham received to his credit ⅟₁₆ of all the oil produced and saved from this well upon the delivery of such ⅟₁₆th of the oil into the pipe line connected to the well. This suit does not involve the oil and interests therein so produced and saved.

There was production and saving of gas from the same well, however, and it and the interests of the parties in and to it and its value is the subject of controversy. Following the discovery of oil and gas there was a short period of time during which the gas was marketed and upon which the Zephyr Oil Company paid to Cunningham ⅟₁₆th of the price it obtained therefor. The marketing connection was lost and for a period the Oil Company neither received any consideration for the gas, nor paid any to Cunningham. This was made known to Cunningham. What was not made known to Cunningham, however, was the fact that the Oil Company subsequently made a new marketing connection for the gas and for a period of over two years it sold the gas and withheld any payment therefor to Cunningham. Sometime within a three year period from the date the new marketing connection was made Cunningham learned of this. Upon inquiry of him, Mr. Taylor, the Oil Company's President, told Cunningham that such Company's attorney was of the opinion that Cunningham had no right arising out of the production and marketing of the gas. Cunningham thereafter filed suit against the Zephyr Oil Company on November 5, 1951.

The plaintiff's petition alleged that the legal effect of the contract of assignment provided an overriding royalty of ⅟₁₆th of ⅞ths of the gas produced from the assigned lease, that it was the intention of the parties at the time of the execution of the assignment that the overriding royalty so reserved extended to the gas as well as to the oil, that through mutual mistake of the parties the words "and gas" were omitted after the words "⅟₁₆th part of all oil" in that part of the assignment heretofore quoted. The suit was to enforce the contract as having provided for the retention in Cunningham of an overriding royalty of ⅟₁₆th of ⅞ths of the gas, and in the alternative and in the event the contract as written be held insufficient to demonstrate such as a provision, for a reformation of the contract to cause the same to provide that there was reserved to Cunningham an overriding royalty of ⅟₁₆th of ⅞ths of the gas. Cunningham also prayed for judgment against Zephyr Oil Company for ⅟₁₆th of the value of the gas produced from said lease, less pro rata taxes paid on the gas, plus interest from the time royalty payments were due him on the gas so produced, and for judgment for the value of such ⅟₁₆th part of ⅞ths of the gas produced and marketed to the marketing connection subsequent to date of the institution of the suit.

To such petition the defendant answered by general denial, coupled with affirmative plea to the effect that the lease assigned was clear, plain and unambiguous, dealt only with oil and not with nor including gas, pleading the four year statute of limitation based upon premise that the assignment was executed more than four years prior to the instigation of the lawsuit and limitation should be tolled from date of its execution, and pleading the two year statute of limitation as to any claim for recovery of a money judgment accrued for the gas produced and marketed by the Zephyr Oil Company over two years prior to the commencement of the suit. Other defenses were alleged by the Zephyr Oil Company which are immaterial to us, having been abandoned in so far as this appeal is concerned.

Upon a trial before the court without the intervention of a jury, the trial judge reformed the paragraph of the assignment in controversy so as to make it read as follows: "It being understood however that the assignor herein reserves to himself an overriding royalty of one-sixteenth (⅟₁₆th) of eight-eights (⅞ths) and the assignee shall deliver to the credit of the assignor as royalty, free of cost, in the pipe line to which it may connect its wells the equal one-sixteenth (⅟₁₆th) part of all oil and gas produced and saved from these premises."

It was further ordered and adjudged that plaintiff Cunningham recover from defendant Zephyr Oil Company the amount sued upon for indebtedness arising under the contract upon the marketing of the gas.

The defendant Zephyr Oil Company excepted to the judgment of the court and brings forward this appeal. It predicates two points advanced upon the statutes of limitation. Primarily, however, it contends that the court erred in reforming the assignment because of the insufficiency of the evidence of the mutual mistake alternatively plead as a basis therefor, and that under no circumstances could the wording of the reservation in question be construed or considered to include gas as well as oil.

From a careful examination of the statement of facts we are compelled to agree that appellant is correct in its contention that the evidence was insufficient to raise any issue of mutual mistake on the part of the parties at the time material to decision, which was the date appellee received the acceptance of his offer from Mr. Taylor, prepared the assignment of the oil and gas lease, and executed and delivered it to appellant. Hence the judgment of reformation was erroneous. The operation and effect of the judgment entered, however, present another question. Its solution is necessary to establish our duties relative to affirmance or reversal of the judgment.

A correct judgment will be affirmed even though the trial court was in error as to the ground occasioning its entry. 3–B Tex.Jur., p. 506, sec. 965. The operation

and effect of the judgment which was entered in this instance would be the same if appellee is correct in his contention that the legal effect of the assignment as written left undisturbed his title to an overriding royalty of $\frac{1}{16}$th of $\frac{8}{8}$ths of the gas. We are of the opinion that such is this legal effect and that the judgment he obtained in the trial court should be affirmed.

When appellee executed the contract he unquestionably conveyed to appellant property theretofore owned by him. This property was gas and oil, title to which was conveyable by him. His title to such property was evidenced by the Oil and Gas Lease unclouded by assignment or other transfer. He had an estate by way of his title to corporeal hereditaments, the oil and gas under 52.5 acres of land. He conveyed to appellant by the execution of the assignment the major part of, but not all of this estate. Appellant concedes that the assignment did not convey all of appellee's estate in the oil and that appellee retained of his estate an overriding royalty of $\frac{1}{16}$th of $\frac{8}{8}$ths of the oil produced and saved from the leased premises. The appellee contends that likewise retained by him was his estate in $\frac{1}{16}$th of $\frac{8}{8}$ths of the gas produced and saved, free and clear of any charge against it because of expense incident to producing and saving it. The term "overriding royalty" as related to oil or to gas denominates such items of property, or the value thereof, in gross quantities produced and saved from a well and without any thing or amount chargable against such quantity which would reduce it or lessen its value.

It is to be remembered that appellee had his estate in the oil ($\frac{1}{16}$th of all such produced and saved) provided to be delivered in his behalf in the pipe line to which the well producing it was connected. This was provided for by the language "* * * the assignee shall deliver to the credit of the assignor as royalty, free of costs, in the pipe line to which it may connect its wells the equal $\frac{1}{16}$th part of all oil produced and saved from the lease premises." Such provision does not qualify the language of reservation or exception going immediately before, to-wit: "* * * assignor herein reserves to himself an overriding royalty of $\frac{1}{16}$th of $\frac{8}{8}$ths * * *", except to perhaps add thereto a duty on the part of the appellant to make a deposit of his part of the oil into a prescribed receptacle. At least such provision in no wise limits the express reservation or exception concerning what the appellee reserved to himself in the first part of the paragraph in question. There is nothing in the latter part of the paragraph which is of any aid in a construction of the first part.

Elemental grammar establishes the requisite of a sentence. It is an assemblage of words so arranged as to express an entire proposition. 79 C.J.S., Sentence, p. 1041. It is a combination of words which is complete as expressing a thought; a sense unit comprising a subject and predicate, especially one with both subject and finite verb expressed. Webster's New International Dictionary, 1926 revision. A sentence is complete though its subject must be implied, if the subject is impliable to matter necessarily considered in connection therewith.

Underlying all the legal rules applicable to construction of contracts are grammatical rules of the English language, and these rules must first be applied that therefrom there might be established a reason and occasion for the application of the legal rules.

Once determined, if the terms of an instrument of contract give it a definite legal effect, the inquiry is concluded, and no intention, however discovered, can contradict or destroy the legal effect of the terms used. If the instrument as written is claimed to vary from the contract as made there may be a right in equity to relief by way of cancellation or reformation. This type of relief has no application to the case at hand, however, because though it was sought in the alternative in the plaintiff's petition, there was no evidence to support the grant thereof and the principle has no place in the present inquiry.

In determining the legal effect of an assignment as in a deed, whether as to grant, exception, reservation, consideration, or other feature, the inquiry is not to be determined alone from a single word, clause, or part, but from every word, clause, and part that is pertinent; the modern and sounder reason being to ignore the technical distinctions between the various parts of the instrument, and to seek the grantor's intention from them all without undue preference to any, for the plain intention of the grantor as disclosed from the instrument as a whole controls the construction. These rules are elementary. Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 1928, 11 S.W.2d 778, reversing, Tex.Civ. App., 279 S.W. 939, rehearing denied, Tex. Com.App., 1929, 14 S.W.2d 819.

An oil and gas lease as a license creates a kind of incorporeal hereditament in and to lands, and as an estate it vests a determinable title to the oil and gas in place or produced from the same premises. The section of the assignment under consideration termed "reservation" deals with such determinable title to oil and gas contemplated by the parties as property, title to which was conveyed by appellee to appellant. Such "reservation", so called, is in law an "exception" because it is effective to withhold from the operation of the assignment something existent in the appellee which otherwise or except for its insertion in the instrument would pass to the grantee Oil Company. Thompson on Real Property (Permanent Edition), Secs. 3458, 3460. See also the discussion in Reynolds v. McMan Oil & Gas Co., supra.

It was held in the case of Houston Oil Co. of Texas v. Williams, Tex.Civ.App. Texarkana, 1933, 57 S.W.2d 380, 382, error refused, that in the grant of land by a deed which contained qualifying language, namely, "save and except about ½ acre of land, known as the McCutcheon Graveyard", the words "save" from and "except" out of have force and meaning and plainly reflect the intention to exclude from the deed, and to be retained by the grantor, some part of the tract of land specifically described as granted. It was further held that the effect of the language created an exception, and reserved fee-simple title to the graveyard.

The reservation of a part of a title to an estate conveyed excepts from the conveyance the prescribed part of the pre-existing rights or interests of the grantor which are conveyable and conveyed except for the reservation. Application to the instant case of the rules of construction discussed in the case of Reynolds v. McMan Oil & Gas Co., supra, requires our conclusion that the assignment in question operated as a matter of law to except from the grant and reserve to appellee an overriding royalty of ¹⁄₁₆th of ⅞ths of both oil and gas, title to which and to both of which having been the subject of conveyance. Necessarily this included all the rights sued for by appellee and accruing to him under the judgment rendered.

In view of our holding upon the construction of the contract of assignment, the point of error urged by the appellant predicated upon contention that reformation of the contract was barred by the four year statute of limitation, Rev.St.1925, art. 5527, has become moot and there is no occasion to express an opinion thereon. The point urged in bar of a part of the cause of action sued upon under the two year statute of limitation is without merit. The statute provides its application to actions for debt where the indebtedness is not evidenced by contracts in writing. The contract here sued upon evidenced in writing the premise of this suit in so far as it pertained to debt.

Judgment of the trial court establishing the title and interest of Joe P. Cunningham to ¹⁄₁₆th of ⅞ths of the gas produced and saved from the lease premises, and for indebtedness due and payable to him as the result thereof is affirmed.