

NUMBER 13-15-00501-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DOYLE WELLS, SEA OATS INVESTMENTS I, L.P.
F/K/A LAMKIN PROPERTIES LIMITED PARTNERSHIP
AND QUIXOTE DUNES, INC.,                           Appellant,

v.

TEXAS DEPARTMENT OF TRANSPORTATION,                Appellee.

On appeal from the 138th District Court of
Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Perkes and Longoria**
**Memorandum Opinion by Justice Longoria**

Appellant landowners Doyle Wells, Sea Oats Investments I, L.P., f/k/a Lamkin

Properties Partnership, and Quixote Dunes, Inc. (collectively, "appellants") filed suit

seeking damages for inverse condemnation against the Town of South Padre Island (the "Town") and the Texas Department of Transportation ("TXDOT").[1] Appellants claim the trial court erred by granting TXDOT's motion to dismiss for lack of jurisdiction. We affirm.

## I. BACKGROUND

In a subdivision plat submitted to and approved by Cameron County on June 19, 1956, Jonathan Conrow (the appellants' predecessor-in-interest) purportedly dedicated to the public certain "street and roadway easements," including an easement for Ocean Boulevard, which later became State Park Road 100 ("Road 100"), which is a road located on the north end of South Padre Island. However, on June 18, 1956, the day before Conrow submitted his plat, Gilbert Kerlin deeded certain land to Conrow. In the deeds, Kerlin expressly excluded certain land from the deed and reserved it for himself. Road 100 was part of the land that Kerlin reserved for himself and later dedicated to the State of Texas and Cameron County.

To this day, Road 100 is operated and maintained by TXDOT. However, the area surrounding the road is void of development and the accumulation of sand from various sources requires TXDOT to periodically remove sand from the road to allow for safe passage by travelers. TXDOT was contacted by the Town of South Padre requesting help in the Town's beach re-nourishment program. The Town had already received the appropriate approval from the U.S. Army Corps of Engineers to permit beach re-nourishment via transporting sand from one area of South Padre to another. On February 28, 2008, TXDOT began removing sand from Road 100 in conjunction with the Town's

---

[1] The Town of South Padre Island is not a party to this appeal.

2

re-nourishment program. The sand removed from Road 100 was loaded onto large trucks and hauled to various areas of beaches that suffered from erosion.

On March 6, 2008, appellants filed their amended petition for inverse condemnation damages against the Town and TXDOT for the sand removed from the road. On April 1, 2008, TXDOT filed a plea to the jurisdiction. Appellants filed a second amended petition and motion for interlocutory summary judgment. The trial court granted the plea to the jurisdiction and the appellants appealed. In a memorandum opinion, this Court reversed the trial court's dismissal of appellants' inverse-condemnation claim, but affirmed the dismissal of appellants' declaratory judgment claim. *Wells v. Tex. Dep't of Transp.*, No. 13-11-00795-CV, 2013 WL 3326558, at *1 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op.). We further dismissed appellants' appeal of the trial court's denial of their motion for summary judgment. *See id.*

On September 9, 2013, appellants filed a third amended petition, asserting claims under the Texas Government Code and seeking attorney's fees. On August 4, 2014, TXDOT filed a motion to dismiss appellants' inverse condemnation claim for lack of jurisdiction on grounds that it allegedly discovered from county deed records that appellants did not own fee title to Road 100. In its motion, TXDOT challenged both the pleadings and the existence of jurisdictional facts.

On August 7, 2014, the parties were ordered to attend mediation. All parties reached and signed a settlement agreement. According to the settlement, the appellants were to dismiss the lawsuit after TXDOT paid appellants $45,000. The trial court granted TXDOT's motion dismissing the government code claims and attorney's fees claims on September 3, 2015. Over the next months, all three appellants withdrew their consent

3

from the settlement agreement and alleged that their consent to the settlement agreement was not made knowingly and was the result of undue influence from their attorney of record. In March of 2015, the trial court denied TXDOT's motion to enforce the settlement agreement but granted the Town's motion to sever the claims against it from the claims against TXDOT. In September of 2015, the trial court granted TXDOT's motion to dismiss for lack of jurisdiction. This appeal followed.

## II. MOTION TO DISMISS FOR LACK OF JURISDICTION

In their only issue on appeal, appellants argue that the trial court erred by granting TXDOT's motion to dismiss for lack of jurisdiction. More specifically, appellants argue that TXDOT failed to meet its burden of showing that the trial court lacked jurisdiction.

## A.    Standard of Review

A trial court must have jurisdiction to adjudicate the subject matter of a cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–28 (Tex. 2004). Whether the trial court possesses jurisdiction is a question of law that is reviewed de novo. *See id.* at 228. Subject matter jurisdiction cannot be waived and may be raised at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). If a plea to the jurisdiction challenges the pleadings, the court must determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *See Miranda*, 133 S.W.3d at 227. When necessary, we consider relevant evidence submitted by the parties to resolve jurisdictional issues. *See id.* "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* Courts do not

4

possess subject matter jurisdiction over cases brought by parties without standing. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444.

## B.    Applicable Law

To have standing to sue for inverse condemnation, the plaintiff must have a property interest in the property at the time of the alleged taking. *See Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 903–04 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, to recover under the constitutional takings clause, a court must first determine an ownership interest in the property taken. *See Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *see also* TEX. CONST. art. I, § 17; *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004).

To interpret what estate a deed conveys, a court must ascertain the intent of the parties as expressed in the instrument. *See Winegar v. Martin*, 304 S.W.3d 661, 665 (Tex. App.—Fort Worth 2010, no pet.). "In determining the legal effect of a deed, whether as to grant, exception, reservation, consideration, or other feature, the inquiry is not to be determined alone from a single word, clause, or part but from every word, clause, and part that is pertinent." *Id.* (citing *Zephyr Oil Co. v. Cunningham*, 265 S.W.2d 169, 174 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.)). If the language is unambiguous, the court may construe the deed as a matter of law. *See id.*

## C.    Discussion

It is undisputed that appellants own tracts of land alongside Road 100.[2] These tracts were created by the subdivision plat submitted by Conrow on June 19, 1956. It is

---

[2] In their live pleading, appellants claim that TXDOT's actions damaged appellants' adjacent property and vegetation. However, in their appellate brief, appellants focus solely on the issue of ownership of the land underneath the easement. Appellants only mention in passing on appeal that "TXDOT damaged their dunes" and "the dunes owned by [appellants] were damaged by the taking of the sand by TXDOT."

further undisputed that TXDOT has an express easement to build and maintain Road 100. However, appellants argue that they own fee title to the land underlying TXDOT's Road 100 right-of-way. Thus, appellants argue that they have standing to bring this suit because they are the successors-in-interest to the land under Road 100.

Conversely, TXDOT argues that the appellants do not own any fee interest in the land under Road 100. TXDOT provided evidence showing that the day before Conrow submitted his plat, Kerlin deeded the property described in the plat to Conrow. The deeds contained the following language:

> To have and to hold the above described premises, together with all and singular rights and appurtenances thereto in anywise belonging, unto the said Jonathan H. Conrow, his heirs and assigns, forever, subject, however, to *the following exclusions which are reserved by Grantor and are expressly not conveyed*:
>
> . . .
>
> (b) The several roads or rights of way running through the said property from north to south, all as more specifically shown and described on a certain map or plat of said area, executed by grantee herein, and approved for record by the Commissioners' Court of Cameron County, Texas, on the _____ day of June, 1956, which said roads or rights of way as shown on said plat are hereby dedicated to the State of Texas and the County of Cameron for use as public roads[.]

(emphasis added). According to the included maps, the area described as "reserved" and "not conveyed" indisputably includes Road 100. Appellants do not contest this fact. Thus, according to TXDOT, the ownership interest in Road 100 resides with Kerlin and his heirs, not with appellants. Appellants argue that the deeds did not include the phrase "save and except"; thus, Road 100 was not actually reserved and all the land was deeded to Conrow. However, we agree with TXDOT: the language is clear and unambiguous in

---

We find that any issues related to damage to appellants' adjacent property are inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Therefore, we will not address those issues.

stating Kerlin's intention of reserving Road 100 for himself. *See Winegar*, 304 S.W.3d at 665. Appellants cite no case law, and we find none, for the proposition that the specific phrase "save and except" is required to make a valid reservation. Looking at the whole instrument and the pertinent language, we find that Kerlin clearly stated that Road 100 was reserved by Kerlin and was "expressly not conveyed" to Conrow. Thus, we conclude that the deed unambiguously reserved Road 100 to Kerlin and his successors. *See id.* Because the appellants do not own or have any vested interest in the underlying land from which the sand was collected and removed, appellants do not have a vested interest in the sand taken. *See City of Sunset Valley*, 146 S.W.3d at 644. And appellants have not claimed any damage to sand dunes other than those within the right of way on Road 100. Without a vested interest in the sand, appellants have no standing to bring the inverse condemnation suit. *See A.P.I. Pipe,* 397 S.W.3d at 166. Without standing, it was not an error for the trial court to grant TXDOT's motion to dismiss for lack of jurisdiction. *See Miranda*, 133 S.W.3d at 227.

Appellants additionally argue that Road 100 was never properly dedicated to TXDOT. However, TXDOT argues that such an argument is completely irrelevant to the issue of standing, and we agree. Whether Road 100 was effectively dedicated is immaterial to appellants' lack of a vested property interest in the land comprising the easement at stake. Furthermore, TXDOT does not claim fee title to Road 100; rather, TXDOT asserts that under the clear and express language of the Kerlin deeds, ownership in Road 100 never transferred to appellants but instead remained with Kerlin and his heirs. Thus, appellants have no standing because they have no vested interest in Road

7

100 and the case should be dismissed regardless of whether Road 100 was properly dedicated to the State. *See id.* We overrule appellants' sole issue.[3]

### III. CONCLUSION

We affirm the trial court's judgment.

Nora L. Longoria
Justice

Delivered and filed the
8th day of December, 2016.

---

[3] In the alternative, by one issue on cross-appeal, TXDOT asserts that the trial court erred in denying its motion to enforce the mediated settlement agreement. However, we need not address TXDOT's alternative argument because we overrule appellants' sole issue on appeal. *See* TEX. R. APP. P. 47.1.