Clarence **KEESE** et al., Appellants,

v.

**CONTINENTAL PIPE LINE COMPANY,**
et al., Appellees.

No. 15921.

United States Court of Appeals
Fifth Circuit.

June 28, 1956.

Robert Lee Guthrie, Dallas, Tex., and Johnson, Guthrie & Stanfield, Dallas, Tex., for appellants.

Fritz Lyne, Dallas, Tex., Frank L. Merrill and Harry G. Dippel, Ft. Worth, Tex., Lyne, Blanchette & Smith, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a summary judgment, rendered on undisputed facts,[1]

---

1. These are:

By oil and gas lease dated Aug. 7, 1939, E. M. Mills, et al. leased to E. L. Mills three tracts of land in Montague County, being a tract of 156 acres, a tract of 32 acres, and a tract of 120 acres; the first two tracts being out of the H. Ravenstone Survey and the third out of the J. B. Maxey Survey. Said lease was a standard form lease for a primary term of ten years. E. L. Mills, the lessee under said lease, was also a mineral owner, and by instrument dated March 23, 1940, he and his wife assigned said lease in its entirety to Harry D. Kahn, and by said instrument also ratified said lease, thus subjecting their mineral interest to said lease. By two assignments, each dated April 9, 1940, Harry D. Kahn assigned the West 20 acres of the forty acre tract upon which appellants by this action seek to impress an overriding royalty interest, to Clarence Keese, et al., and the East 20 acres of said forty acre tract to Earl Hollandsworth, et al. These two assignments severed the said forty acres from the remainder of the lease, such severance being authorized by the specific terms of the lease.

All of the assignees under the two assignments of April 9, 1940, joined in the execution of an assignment dated Dec. 4, 1946, to Harry E. Riley wherein they assigned said lease insofar as it covered said 40 acres, and in said assignment the assignors reserved unto themselves an overriding royalty interest amounting to 1/16 of 7/8 by the following language:

"* * * excepting, however, that the following named assignors hereby expressly reserve the equal one-sixteenth of seven-eighths B.S. part, as an overriding royalty, as hereinafter provided, of all oil, gas and other minerals which may be produced and saved by grantee, his heirs, successors and assigns, from the land affected hereby under and by virtue of the lease above mentioned, delivery of such oil, and/or gas to be made free of cost to the credit of assignors into the pipeline to which the well or wells on said premises may be connected: * * *"

that the plaintiffs take nothing by their suit for an accounting for oil produced from a forty acre tract under a lease dated November 4, 1953, from E. M. Mills et al. to one Arnold H. Bruner, presents a single question for decision.

This question is whether an overriding royalty of one-sixteenth of seveneights, created and carved out of the working interest in an oil and gas lease covering 40 acres, dated Aug. 7, 1939, which plaintiffs, as owners of the leasehold estate, had reserved to themselves out of an assignment made Dec. 4, 1946, to one Harry E. Riley, survived the termination of the lease out of which it was carved and its surrender by later assignees and owners of the leasehold estate to the mineral owners, the original lessors.

The district judge, concluding that the plaintiffs' right or claim to an overriding royalty was appurtenant to and dependent on the continuance in force of the leasehold estate out of the assignment of which it was excepted, and that upon abandonment and surrender by the owners of the leasehold, it ceased to exist, rejected plaintiffs' claim to oil and gas produced under the lease to Bruner and gave judgment for the defendants.

Plaintiffs, appealing from that judgment, are here insisting that the district judge erred in so holding and adjudging,

(There then follows a division of said overriding royalty interest among the respective assignors.)

An oil well was completed on said 40 acres on May 19, 1947, but later, ceasing to produce, it was plugged and abandoned on July 5, 1952, a plugging report was filed with the Railroad Commission, and, thereafter, until appellees and appellees' predecessor in title (Bruner) drilled a well on said land in 1954, under the lease hereafter referred to from Mills et al., the record owners of the minerals, there was no other oil and gas produced from the 40 acre tract.

In all there were a large number of assignments of the oil and gas lease of Aug. 7, 1939, insofar only as said lease covered the 40 acres involved in this suit. By Sept. 11, 1951, said lease, insofar as it covered said 40 acres, became vested in Jack Mercer, Ralph Reynolds, and J. W. Marshall, and by release of oil and gas lease dated July 13, 1953, and a correction release of Nov. 30, 1953, these three, Marshall, Mercer, and Reynolds, the then record owners of the oil and gas lease dated Aug. 7, 1939, insofar as it covered said 40 acres, released said lease to Mills et al., the mineral owners of said land.

By a new oil and gas lease dated Nov. 4, 1953, the record owners of the minerals (Mills) under said 40 acres leased said land to Arnold H. Bruner, who assigned an interest under said oil and gas lease to the intervenor, Nortex Oil & Gas Corp., and to each of the third-party defendants (with the exception of Continental Oil Co.) their respective interests as shown by the division order, are shown by the plat showing the land covered by the Mills 1939 lease and the land covered by the Bruner 1953 lease. The land cov-

ered by the Bruner lease is the identical land, the lease on which was released by Marshall, Mercer and Reynolds, to the mineral owners and is the identical land covered by the same lease which was assigned by appellants to Riley.

Subsequent to the acquisition of said new lease by Arnold H. Bruner and prior to the assignment to Nortex a new oil well was drilled on said land and is now producing. It is the production under this new lease which plaintiffs seek by this suit to claim an interest in under the overriding royalty reserved and carved out of the oil and gas lease of Aug. 7, 1939, though the lease had been abandoned and released to the lessors after the cessation of production thereon.

To summarize, although the oil and gas lease of Aug. 7, 1939, covered 308 acres, consisting of a 156 acre tract, a 32 acre tract and a 120 acre tract, this suit is concerned with only 40 acres out of the 120 acre tract. As to this tract, the original lessee E. L. Mills assigned all of said lease to Harry D. Kahn. Harry D. Kahn assigned the West 20 acres of the 40 acres to Keese, Webster and Adkins, and the East 20 acres of the West 40 acres of said 120 acres to Earl Hollandsworth and Sciscoe, while all of said assignees joined together and assigned the whole west 40 acres to Harry E. Riley, reserving an overriding royalty of 1/16 of 7/8 "of the oil, gas, etc. which may be produced under said lease". *Thus the overriding royalty which plaintiffs sue for never existed except under the original lease on the forty acres and this lease was subsequently abandoned and released to the mineral owners by the owners of the leasehold.* (Emphasis supplied.)

and the judgment should be reversed and remanded with directions to enter judgment in their favor. In the alternative, they urge that the evidence is sufficient to raise an issue of fact as to whether Marshall acted in good faith in terminating and surrendering the 1939 Mills lease and whether Bruner and his assigns acquired their interest with notice of such facts as would put a reasonably prudent person on inquiry.

Appellees, countering appellants' position, that an overriding royalty interest reserved in assigning a leasehold estate does not terminate when the owner of the estate surrenders and releases the lease out of which the overriding royalty was carved, with a counter proposition [2] of their own, urge upon us that the Texas oil industry and the Texas courts [3] early had occasion to pass upon this question, and the conclusion, that the reserved overriding royalty or production payment terminated as to the land covered by that portion of the lease which was surrendered back to the landowners, was accepted by the courts and litigants alike, and that generally elsewhere [4] the rule is the same.

■ We agree with appellees that this is so, and that, unless, as is not the case here, the instrument creating the overriding or royalty interest makes express provision to the contrary, the interest continues or ceases with the leasehold estate out of which it is carved and cannot survive termination by surrender or release of the leasehold estate by the owners.

Appellants cite no case from Texas or elsewhere which supports their view. We have found none. Indeed, our research leads us to quite the contrary conclusion. Cases like Emerson v. Little Six Oil Co., 3 F.2d 265, from this court, which appellants quote, and Zephyr Oil Co. v. Cunningham, Tex.Civ.App., 265 S.W.2d 169, from Texas, from the latter of which appellants quote the eminently correct statement, reservation of "overriding royalty" interest withholds from assignment something existent in assignor, are not in point either on their issues or their facts.

■ Of appellants' alternative contention, that the case presented fact questions for decision on the issue of whether the lease was surrendered in good faith and the case was not, therefore, one for summary judgment, it is sufficient to say that we cannot at all agree with this view.

Assuming, without deciding, that the surrender to the mineral owners by the holders of the leasehold estate could, under any state of facts, operate to give the owners of the override an interest in oil produced not under the lease from which the override was carved but under a new one issued by the mineral owners to a different lessee, though in the state of the authorities affirming the right of the lessee to do just that, it is difficult to assume any state of facts which could do so, it is quite clear that no such facts or circumstances are presented or pointed to by plaintiffs. For while in paragraph two of their reply to the motion for

2. "The Lessee owner of a segregated portion of an oil and gas lease has both the power and right to abandon and surrender his part of the lease. If an overriding royalty or production payment interest has been carved from said portion of said lease, the effect of such surrender is to terminate such overriding royalty or production payment interest."

3. Harrison v. Barngrover, Tex.Civ.App., 72 S.W.2d 971; MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334; Montgomery v. Phillips Petroleum Co., Tex.Civ.App., 49 S.W.2d 967; Simms Oil Co. v. Col-

quitt, Tex.Com.App., 296 S.W. 491; Tunstill v. Gulf Prod. Co., Tex.Civ.App., 79 S.W.2d 657; 20 Texas Law Review, A. W. Walker, Jr., p. 259.

4. Arkansas Fuel Oil Co. v. Gary, La.App., 70 So.2d 144, reversed on other grounds, 227 La. 524, 79 So.2d 869; Crothers v. Gen. Petroleum Corp., 131 Cal.App.2d 98, 280 P.2d 182; Garner v. Knudsen, 129 Cal.App.2d 747, 277 P.2d 890; LaLaguna Ranch Co. v. Dodge, 18 Cal.2d 107, 145 P.2d 351, 135 A.L.R. 546; Phillips Pet. Co. v. McCormick, 10 Cir., 211 F.2d 361.

summary judgment, they do say, "There are issues of good faith involved with respect to a reported surrender of the lease by Reynolds, Miller, and Marshall, as shown by instruments attached", nothing stated in them, though taken in the light most favorable to the plaintiffs, could furnish a basis for the claim plaintiffs assert here.

Here, as in Collins v. Atlantic Oil Pro. Co., 5 Cir., 74 F.2d 122, Marshall et al., remote assignees in the leasehold chain of title, were under no obligation to plaintiffs to drill or to continue to hold on to the lease, and the facts set out in plaintiffs' affidavit, that they knew or might have known that a good well could be brought in on the property, could not have prevented them from surrendering the lease to the landowners for any reason or for no reason at all.

Mr. Earl A. Brown, in his article entitled "Assignments of Interests in Oil and Gas Leases * * *", 5th Annual Institute on Oil and Gas Law and Taxation, at page 51 states:

"Ordinarily, an assignment of a lease where assignor retains an overriding royalty interest without further provision does not create a fiduciary relationship between the assignor and assignee. * * *"

On page 64, he makes the further statement:

"* * * The obligations of the payor or grantor of the oil payment, unless otherwise modified, go no further than those contained in his contract with the payee, and the rights and privileges of lessee under the lease may be exercised without liability to the holder of the oil payment. Thus, he may allow the lease to terminate under its terms for nonpayment of delay rentals or by surrender of the lease or by failure to drill. * * *"

Mr. A. W. Walker, Jr., concurs in this conclusion, as shown by his statement on page 288 of his article entitled "Oil Payments", 20 Texas Law Review, 259:

"The ease with which oil payments may be destroyed presents a much more serious problem to the person who has acquired his oil payment by grant from the lessee, or by reservation in the assignment of a lease. Since the person owning the reversionary interest is not a party to the transaction creating the oil payment, the payee has only a restricted opportunity to protect himself against the possibility that the lease will terminate and his interest be destroyed."

In Montgomery v. Phillips Petroleum Co., Tex.Civ.App., 49 S.W.2d 967, 971, the court, in discussing the fact that Phillips had a right to surrender the lease, quoted from 1 C.J. 965, Sec. 58 as follows:

"'* * * The exercise by one man of a legal right cannot be a legal wrong to another. * * * To state the point in a few words, whatever one has a right to do, another cannot have a right to complain of. * * *'" See also 1 C.J.S., Actions, § 15.

In this case, Marshall, Mercer and Reynolds had a clear and absolute right to release the Mills 1939 lease. The third party defendants are not in privity with these persons. If they did anything wrongful, which plaintiffs seem to intimate without pointing out anything specific, in the doing of an act which they had a right to do, it would seem that plaintiffs' cause of action, if any, is against Marshall, Mercer and Reynolds, and not against appellees who were in nowise connected with the transaction of which plaintiffs complain. In the Tunstill, Simms and Harrison cases,[5]

5. For an article, well written, well documented, and well sustained, on the transfer of the oil and gas lessee's interest, by William D. Warren, Associate Professor of Law, Illinois College of Law, the Texas Law Review, Vol. 34, No. 3, may be profitably consulted, with especial attention as applicable here to Sec. 5, "Duration of Interest Carved Out of the Lessee's Interest," beginning at p. 412.

cited in note 3, *supra*, the courts held to this effect.

The judgment was right. It is affirmed.