EOG RESOURCES, INC. f/k/a Enron Oil & Gas Company, Appellant,

v.

HANSON PRODUCTION COMPANY, Hanson Production Company as agent for Erik G. Hanson, Ben A. McCarthy, George E. Jochetz III, John J. Surko, Linda C. Barber, Richard P. Lucas, Daniel W. Forney, Karen M. Smith, Florabel Hoke, Barbara A. Hanson, Cecil R. Rives and Howard W. Kiatta, Appellees.

No. 04–02–00025–CV.

Court of Appeals of Texas, San Antonio.

Oct. 23, 2002.

Rehearing Overruled Nov. 14, 2002.

James McCartney, Sandra G. Rodriguez, Vinson & Elkins, L.L.P., John A.

Sullivan, III, Filteau, Sullivan & O'Rourke, P.C., Houston, for Appellant.

George E. Cire, Attorney At Law, Kurt M. Hanson, Hanson, Lamberth & Kiatta, L.L.P., Houston, Joe J. Fisher, II, Provost & Umphrey, Beaumont, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice ALMA L. LÓPEZ, Justice SANDEE BRYAN MARION, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

Appellant EOG Resources, Inc. ("EOG") appeals from the trial court's judgment after a non-jury trial. On appeal, EOG contends the evidence was legally insufficient to support the trial court's findings that Hanson Production Company's ("Hanson") overriding royalty interest was defined by the terms of a mineral lease assignment and that this overriding royalty interest was enforceable upon extensions or renewals of the assigned mineral lease. We overrule EOG's two issues and affirm the judgment of the trial court.

### BACKGROUND

This is a dispute surrounding EOG's alleged failure to pay Hanson overriding royalties pursuant to an assignment which assigned Hanson's lease interest to EOG. The essential facts of the case are undisputed by the parties. On June 6, 1997, EOG sent a letter to Hanson offering to acquire Hanson's leasehold position in six mineral leases located in Jefferson County, Texas. The letter provided the "general terms" of the assignment. EOG offered to pay $55,110.44, or $100 per net mineral acre, to Hanson upon a mutually acceptable form of assignment conveying the interest to EOG. Hanson would deliver a net revenue interest of 75% reserving the difference between 25% and any other lease burden (i.e. landowner royalty). This reservation constituted the "overriding royal-

ty." The letter was signed by Steve Himes, senior landman for EOG. Hanson noted its agreement by signing the letter. Richard Lucas, landman, signed on behalf of Hanson.

The parties executed an "Assignment of Oil, Gas and Mineral Leases" (the "Assignment") on August 20, 1997. The operative section regarding Hanson's overriding royalty specifically provides the following:

> Assignor [Hanson] reserves unto itself ... an overriding royalty equal to the difference between the aggregate of the basic royalties, overriding royalties and similar burdens chargeable to Assignor's leases existing on the effective date of this Assignment and twenty-five percent (25.00%). The overriding royalty reserved herein shall burden any extensions or renewals taken within one (1) year of termination of the subject leases; ....

While in draft form, EOG made revisions to the Assignment which were ultimately incorporated into the final draft. The most important of these revisions was EOG's insertion of a paragraph referencing the June 6, 1997 letter and which came after the paragraph which created Hanson's overriding royalty interest. That paragraph states, "This Assignment of Oil, Gas and Mineral Leases is subject to that certain unrecorded letter agreement dated June 6, 1997, by and between Assignor and Assignee." No other revisions were made to the Assignment by EOG.

Prior to EOG commencing production, two of the six leases expired. Without Hanson's participation, EOG negotiated with the landowners for two new leases. Where the landowners had previously agreed with Hanson for a 1/6 royalty interest, they only agreed to a 1/4 royalty interest with EOG. After the renewal, EOG drilled and successfully completed a well in the area. The division order sent by EOG to Hanson reflected a total overriding royalty in an amount less than the overriding royalty based upon the formula established under the Assignment. On August 3, 1999, by letter, Hanson informed EOG of the discrepancy.[1] In a letter dated August 20, 1999, EOG informed Hanson that the higher royalty demanded by the landowners under the two new leases it had negotiated effectively nullified Hanson's overriding royalty.

Hanson subsequently filed suit against EOG, alleging a claim for breach of contract and seeking a declaratory judgment. The parties stipulated to the amount of damages owed to Hanson based upon the Assignment, approximately $151,756.00. A bench trial was held. Both parties agreed the terms of their agreement were not ambiguous. On this basis, no witnesses were heard and the trial court considered the arguments of counsel and evidence stipulated to by the parties. The trial court subsequently entered a final judgment in Hanson's favor. Findings of fact and conclusions of law were timely requested by EOG and entered by the trial court. The trial court specifically found that Hanson's overriding royalty was based upon the terms of the Assignment. Specifically, the trial court found that Hanson's overriding royalty was fixed and determined on the date the Assignment was made. The trial court also found that Hanson's overriding royalty was enforceable on extensions or renewals. The court also found that the leases listed in the Assignment contained a 1/6 landowner roy-

1. This letter, admitted as evidence and considered by the trial court, reflected that the landowner's royalty interest on the effective date of the Assignment was 1/6th and that based upon the Assignment, Hanson would receive an overriding royalty equal to the difference between 25% and 16.6666% or 8.3334%.

alty burden effective on the date of the Assignment. Accordingly, the overriding royalty reserved by Hanson was the difference between 25% and 16.666% or 8.33334%. EOG appeals the trial court's judgment.

### Standard of Review

Neither EOG nor Hanson contend the contract in question is ambiguous. The interpretation of an unambiguous contract is a question of law and we are not required to defer to any interpretation afforded by the trial court. *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999); *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex.App.-San Antonio 2001, pet. denied). Accordingly, we review the trial court's construction of an unambiguous contract by a *de novo* standard.

### Analysis

An overriding royalty is a benefit an assignor receives when he or she assigns a leasehold interest. It is an interest which is carved out of, and constitutes part of, the working interest created by an oil and gas lease. *Gruss v. Cummins*, 329 S.W.2d 496, 501(Tex.Civ.App.-El Paso 1959, writ ref'd n.r.e.). Specifically, it is the share of the oil or gas produced reserved in assignment, part assignment, or sublease of an oil and gas lease payable to the assignor by the assignee over and above the royalty reserved in the lease payable to the lessor. *See* 3 W.L. Summers, The Law of Oil & Gas § 554 (2nd ed.1958). An overriding royalty is an interest in real property regarded as a covenant running with the land between the assignor and the assignee, and is enforceable by the assignor against the assignee. *Phillips Petroleum Co. v. Taylor*, 116 F.2d 994, 995 (5th Cir.1941). At issue in this case is the scope of Hanson's overriding royalty interest as defined by the contract between Hanson and EOG.

EOG contends that the Assignment is not determinative of Hanson's overriding royalty interest. Rather, EOG contends the June 6, 1997, letter defines the scope of Hanson's overriding royalty interest. For this reason, EOG contends that it inserted the "subject to" language in the Assignment. By inserting this language, it was EOG's intent to correct two problems it had with Hanson's initial draft of the Assignment: (1) its failure to expressly state that EOG had a 75% revenue interest and (2) providing that Hanson's overriding interest would be effective in the case of renewals or extensions on the leases.

Where a written contract is clear and certain, the instrument will be deemed to express the intention of the parties and will be enforced as written, no matter what their actual intention may have been. *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000); *Elliott–Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). In pursuit of this goal, a court examines the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecommunications Corp.*, 995 S.W.2d at 652. We presume that the parties to a contract intend every clause to have some effect. *Birnbaum*, 48 S.W.3d at 257. We enforce an unambiguous contract as written. *Id.* Where the meaning of the contract is plain and unambiguous, a party's construction is immaterial. *Ussery Inv. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 593 (Tex.App.-Houston [1st Dist.] 1983, writ dism'd). Finally, when two or more instruments make up a single transaction, all of them must be construed together as one contract. *Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 693

(Tex.App.-Houston [14th Dist.] 1999, no pet.).

▮▮▮ In light of these principles, contrary to EOG's contention, the agreement of the parties is embodied in both the letter and the Assignment. The Assignment expressly states that the assignment is "subject to" the parties' letter agreement. Therefore, the plain language of the assignment, at a minimum, incorporates by reference the June 6, 1997 letter. *See Eland Energy, Inc. v. Rowden Oil & Gas, Inc.,* 914 S.W.2d 179, 185 (Tex.App.-San Antonio 1995, writ denied). Even if we were to assume that the terms "subject to" made the Assignment subservient to the June 6, 1997 letter agreement,[2] EOG's argument would fail because the letter is silent on whether Hanson's overriding royalty would apply to lease extensions or renewals.

EOG relies on this court's opinion in *Eland Energy, Inc.* for the proposition that the "subject to" language in the Assignment makes the June 6, 1997 letter determinative of Hanson's overriding interest. In *Eland Energy, Inc.,* Rowden and Cox entered into a letter agreement regarding a "farmout" on the Perez Lease. Under that agreement, Rowden would assign 40 acres in the form of a square around each producing well Cox completed upon the condition that Cox would commence drilling within 10 days and drilled to a specific depth. If Cox gave notice that he was ready to plug and abandon a well, Rowden had the right to take over the well. An assignment which was subsequently executed assigned Rowden's entire interest in the Perez Lease to Cox. The assignment, however, provided that it was "subject to the terms and provision of that

certain [l]etter [a]greement . . . and in particular to the continuous drilling obligation imposed by such [a]greement." *Id.* at 182. Eland, a subsequent assignee of Cox, contended that Rowden had assigned his entire interest in the Perez Lease and therefore Eland has equitable title in the Perez Lease. The court held the "subject to" language in the Assignment negated this argument. The reasoning of the court was that the "subject to" clause made the acquisition of equitable title dependent upon the continuous drilling obligation as encompassed under the letter agreement. By reading the letter agreement and assignment together, this court concluded that Rowden had reserved equitable title to all lands not affected by producing wells completed by Cox. *Id.* at 185. The court reached that conclusion on the basis that the "subject to" language in the assignment specifically referenced the continuous drilling obligation language in the letter agreement that defined Cox's interest. These facts, however, are distinguishable from the instant matter. Contrasting, the June 6, 1997, letter is silent on whether or not Hanson's overriding royalty would apply to lease extensions or renewals. Given this important factual distinction, we are not inclined to hold that the June 6, 1997 letter, alone, defined Hanson's overriding royalty interest.

▮▮▮ Our conclusion that the parties' contract is encompassed in both the June 6, 1997 letter and Assignment is further supported by the general rule in oil and gas law that controversies regarding assignors and assignees are governed by the construction and interpretation of the provisions of the assignment itself and the collateral contracts of the parties. *See,*

---

**2.** "Subject to" as used in conveyances is a term of qualification and not of contract. *Kokernot v. Caldwell,* 231 S.W.2d 528, 531 (Tex.Civ.App.-Dallas 1950, writ ref'd). Used in its ordinary sense, the term "subject to" means "subservient to" or "subordinate to" or "limited by." *Id.*

*e.g., Sunac Petroleum Corp. v. Parkes,* 416 S.W.2d 798, 805 (Tex.1967); *H.G. Sledge Inc. v. The Prospective Inv. & Trading Co., Ltd.,* 36 S.W.3d 597, 606 (Tex.App.-Austin 2000, pet. denied); *Phillips v. Inexco Oil Co. Inc.,* 540 S.W.2d 546, 548 (Tex. Civ.App.-Tyler 1976, writ ref'd n.r.e.) (looking to assignment and letter agreement to determine rights of assignor and assignee).[3] For these reasons, we overrule EOG's first issue.

 In their second issue, EOG contends the trial court erred in finding that Hanson's overriding royalty is enforceable upon any extensions or renewals of mineral leases. An overriding interest created by assignment does not survive the termination of the assigned lease unless the instrument creating the overriding interest provides an express provision to the contrary. *See Fain & McGaha v. Biesel,* 331 S.W.2d 346, 348 (Tex.Civ.App.-Fort Worth 1960, writ ref'd n.r.e.). Here, the Assignment expressly provides that Hanson's overriding royalty "shall burden any extensions or renewals taken within one (1) year of termination of the subject leases...." Therefore, the express language of the parties' agreement indicates Hanson's overriding royalty interest would apply to extensions and renewals taken within a year. If we solely considered the June 6, 1997 letter, which is silent on the issue, we would be contradicting established contract interpretation principles to examine the entire agreement, give effect to every clause, and not render any clause meaningless. Under EOG's interpretation, the clause providing that Hanson's overriding interest would burden any extensions or renewals taken within one year

would be rendered meaningless. We refuse to render a portion of the contract meaningless. Therefore, we overrule EOG's second issue.

#### CONCLUSION

Having overruled EOG's two issues on appeal, we affirm the judgment of the trial court.

---

**3.** EOG also relies on *H.G. Sledge Inc.* for the proposition that this court should only focus on the June 6, 1997 letter as determinative of the rights of the parties. Notably, in that case, there was only one document determinative of the parties' rights, a farmout agree- ment. In this case, we are dealing with the agreement of the parties as encompassed in two documents. For this reason, we conclude *H.G. Sledge Inc.,* is dispositive of this case.