[COMMENT1] 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-263-CV

 

 

RANGE RESOURCES CORPORATION                                     APPELLANTS

AND RANGE PRODUCTION I,
L.P. AND 

STEADFAST FINANCIAL, LLC,


R.J. SIKES, KATHY SIKES, 

CHRISTY ROME, GREG
LOUVIER, 

PAM LOUVIER, AND DACOTA 

INVESTMENT HOLDINGS, LLP 

AND
R. CRIST VIAL                                                                             

 

                                                   V.

 

BETTY LOU BRADSHAW                                                         APPELLEE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

We deny Appellants= motion
for rehearing, but we withdraw our opinion and judgment of May 8, 2008 and
substitute the following.  We affirm.

 








I. Introduction

In three issues, Appellants Range Resources
Corporation, Range Production I, LP, Steadfast Financial, LLC, R.J. Sikes,
Roger Sikes, Kathy Sikes, Christy Rome, Greg Louvier, Pam Louvier, Dacota
Investment Holdings, LLP, and R. Crist Vial (collectively ARange@) appeal
the trial court=s partial summary judgment in
favor of Appellee, Betty Lou Bradshaw. 
While the underlying suit brought by Bradshaw involves claims for breach
of fiduciary duty and conspiracy, the overarching issue in this interlocutory
appeal by agreed order is whether the trial court correctly decided that the
reservation in two 1960 deeds was a Afraction
of royalty@ interest rather than a Afractional
royalty@
interest.  We conclude that the trial
court was correct and that the reservation was a Afraction
of royalty.@

II. Factual and Procedural History








Bradshaw is the holder of a non‑participating
royalty interest (ANPRI@)[1]
in approximately 1,800 acres in Hood County that she inherited from her
parents, J.A. and Lota Fay Driskill.  The
Driskills reserved the royalty interest in two deeds that they executed in 1960
(the A1960
Deeds@).[2]









By 2006, Appellant Steadfast owned the surface
and mineral estates in approximately 1,994 acres in Hood County, of which the
Driskills= reserved royalty interests
covered 1,800 acres.  Steadfast conveyed
the surface estate to Appellant Range Resources Corporation but reserved to
itself all of the oil, gas, and other hydrocarbons in the 1,994 acres.  At the same time, Steadfast entered into an
oil and gas lease covering the 1,994 acres with Appellant Range Production I,
L.P.; the lease provided for a 1/8 royalty. 
Steadfast assigned portions of its royalty interest to the following
additional Appellants: R.J. and Kathy Sikes, R. Crist Vial, the Louviers, and
Dacota Investment Holdings, LLP.[3]     In
January 2007, Bradshaw filed suit, alleging that Steadfast breached its
fiduciary duty to her by entering into the one-eighth royalty lease with Range
Production I, L.P., when Steadfast owed her a duty to secure a one-fourth
royalty in the lease.  Bradshaw argued
that she was entitled to a one-eighth royalty (1/2 of 1/4 lease royalty),
rather than a one-sixteenth royalty (1/2 of 1/8 lease royalty) because, at the time
Steadfast executed the lease to Range, the Agoing
royalty rate in Hood County, Texas, was one-fourth.@  

The parties filed competing motions for summary
judgment on whether the 1960 Deeds reserved a Afraction
of royalty@ or a Afractional
royalty@
interest.  Range argued that Bradshaw=s NPRI
was a fixed one-sixteenth Afractional
royalty@ (1/2 x
1/8) and, therefore, no fiduciary duty was owed or breached.  Bradshaw contended that the 1960 Deeds
provided for a Afraction of royalty,@ such
that her share of royalty could never drop below one-sixteenth but could be
greater than one-sixteenth.  Thus, if a
future lease provided for a one-eighth royalty, she would get a one-sixteenth
(1/2 x 1/8) share of production; if it provided for a one-sixth royalty, she
would be entitled to a one-twelfth (1/2 x 1/6) share of production. 

The trial court agreed with Bradshaw, holding
that the royalty interest reserved in the 1960 Deeds was a Afraction
of royalty@ interest.  This interlocutory appeal by agreed order
followed.  See Tex. Civ. Prac. & Rem. Code Ann. '
51.014(d) (Vernon 2008).  The trial court
stayed the proceedings below pending our review.  

III. Standard of Review








Neither Bradshaw nor Range contends that the 1960
Deeds are ambiguous.  The interpretation
of an unambiguous deed is a question of law.  Altman v. Blake, 712 S.W.2d 117, 118 (Tex.
1986).  Accordingly, we review de
novo the trial court=s construction.  EOG Res., Inc. v. Hanson Prod. Co., 94
S.W.3d 697, 701 (Tex. App.CSan
Antonio 2002, no pet.).  When conducting
a de novo review, the reviewing court exercises its own judgment and
redetermines each issue, according no deference to the trial court=s
decision.  Quick v. City of Austin, 7
S.W.3d 109, 116 (Tex. 1998).    

IV. AFraction
of Royalty@ versus AFractional
Royalty@ 

The sole issue in this appeal is one of deed
interpretation: whether the royalty reservations in the 1960 Deeds constitute a
Afractional
royalty@ or a Afraction
of royalty.@ 

A Afractional
royalty@
interest entitles the owner to the specified fractional amount stated in the
deed of oil, gas, or other minerals produced from the land and remains constant
regardless of the amount of royalty contained in a subsequently-negotiated oil
and gas lease.  See Tiller v. Tiller,
685 S.W.2d 456, 458 (Tex. App.CAustin
1985, no writ); Phillip E. Norvell, Pitfalls in Developing Lands Burdened by
Non‑Participating Royalty: Calculating the Royalty Share and Coexisting
with the Duty owed to the Non‑Participating Royalty Owner by the
Executive Interest, 48 Ark. L. Rev.
933, 935 (1995).








A Afraction
of royalty@ conveys a fractional share of the
royalty that is contained in an oil and gas leaseCit is
not fixed, but rather Afloats@ in
accordance with the size of the landowner=s
royalty contained in the lease and, in addition to the landowner=s
royalty, the fraction of non‑participating royalty also shares
proportionally in any overriding royalty interest reserved in the oil and gas
lease, and the holder of the executive right owes a duty to the NPRI owner in
establishing the landowner=s
royalty in an oil and gas lease. 
Norvell, 48 Ark. L. Rev.
at 935_36.  The amount to be paid to the owner is
determinable upon the execution of some future lease and is calculated by
multiplying the fraction in the royalty reservation by the royalty provided in
a lease.  See Winslow v. Acker,
781 S.W.2d 322, 327 (Tex. App.CSan
Antonio 1989, writ denied); Tiller, 685 S.W.2d at 458.

A. Rules of Deed Interpretation








In construing a deed, our primary duty is to
ascertain the intent of the parties by a fundamental rule of construction known
as the Afour
corners@
rule.  Luckel, 819 S.W.2d at 461;
Bennett v. Tarrant County Water Control & Imp. Dist. No. One, 894
S.W.2d 441, 446_47 (Tex.
App.CFort
Worth 1995, writ denied).  We do not look
for the subjective intent of the parties, which may be conflicting; instead, it
is the objective intent, the intent expressed or apparent in the writing, that
is sought.  Cherokee Water Co. v.
Forderhause, 641 S.W.2d 522, 525 (Tex. 1982).  In seeking to ascertain the intention of the
parties, we must attempt to harmonize all parts of the deed.  Altman v. Blake, 712 S.W.2d 117, 118
(Tex. 1986).  Even if different parts of
the deed appear contradictory or inconsistent, the court must strive to
construe the instrument to give effect to all of its provisions.  Luckel, 819 S.W.2d at 462.

B. 1960 Deeds= Royalty
Reservations

The reservation at issue is contained within
three unnumbered paragraphs in each deed, with the controversial portions in
italics:

[1] The Grantors herein
reserve unto themselves, their heirs and assigns, and except from this
conveyance an undivided one-half (1/2) Royalty (Being equal to not less than
an undivided one-sixteent[h] (1/16)[)] of all the oil, gas and/or other
minerals in, to, and under or that may be produced from said . . . land
aforesaid, to be paid or delivered to said Grantors, as their own property,
free of cost Forever; together with the right of ingress and egress at all
times for the purpose of storing, treating, marketing and removing the same
therefrom.

 

[2] Said interest hereby
reserved is a Non-Participating Royalty and shall not participate in the
Bonuses paid for any oil, gas or other mineral[s] lease covering said land, nor
shall it participate in the money rentals which may be paid to extend the time
within which a well may be begun under the terms of any lease covering said
land.  It shall not be necessary for the
Grantors, their heirs, and assigns, to join in the execution of any lease
covering said Royalty interest herein reserved, and the Grantee herein, his
heirs and assigns, shall have the right to lease said land for oil, gas and
other minerals provided, however, that all such leases shall provide for
Royalty of not less than one-eighth (1/8):

 

(a) on oil, gas and other
minerals, liquid or solid;

 








(b) Of the net proceeds
from the sale of liquid hydrocarbons such as gasoline, butane, protane or from
the sale of any other manufactured or processed by-products extracted or
recovered from said natural gas or casinghead gas;

 

(c) Of the net proceeds
derived from the sale of all residue gas or its by-products.

 

[3] In the event oil, gas
or other minerals are produced from said land, then said Grantors, their heirs
and assigns, shall receive not less than one-sixteenth (1/16) portion (being
equal to one-half (1/2) of the customary one-eighth (1/8) Royalty) of the
entire gross production and/or such net proceeds as hereinabove provided as
their own property to be paid or delivered to said Grantors free of all cost from
royalty oil, gas and/or other minerals, by-products manufactured or processed
therefrom. [Emphasis added.]

 

C. Analysis

The Texas Supreme Court interpreted a similar
clause in Brown v. Havard. 593 S.W.2d 939 (Tex. 1980).  In that case, a clause in a 1963 warranty
deed reserved Ain perpetuity an undivided one‑half
non‑participating royalty (Being equal to, not less than an undivided
1/16th) of all the oil, gas and other minerals.@  Id. at 940.  After a lease with a 3/8 royalty was
executed, the Browns claimed a 3/16 royalty interest.  Id. at 941.  The court concluded that the clause was
ambiguous and upheld the jury=s
finding that the parties= intent was to reserve a royalty
equal to 1/16 based on extrinsic evidence.  
See id. at 942; Havard v. Brown, 577 S.W.2d 757, 759_60 (Tex. Civ. App.CSan
Antonio 1979), aff=d, 593
S.W.2d 939 (Tex. 1980). 








The court reasoned that, A[w]ithout
the parenthesis, the reservation is either a 1/2 royalty or 1/2 of royalties,@ that
is, a fractional royalty or a fraction of royalty, although it did conclude
that the language without the parenthetical would reserve 1/2 of all oil, gas,
and other minerals produced, i.e., a fractional interest, and not 1/2 of any
outstanding or future royalty.  Brown,
593 S.W.2d at 942.  The parenthetical
presented further ambiguity: either (1) the parties intended to reserve 1/2 of
the conventional 1/8 royalty, Abeing equal
to@ a 1/16,
with the Anot less than@
insuring that the reservation was 1/2 of the conventional 1/8 and that, if the
royalty were reduced, the Browns would still receive their 1/16; or (2) the
parties intended to reserve 1/2 of the royalties contained in future leases,
providing further that such share must not be less than 1/16.  Id. 
The majority discounted the second interpretation because it Amust
ignore the presence of the >comma= between
the phrase >Being equal to= and the
phrase >not less
than an undivided 1/16th.=@  Id. 








Justice McGee, dissenting, stated that the
provision was not ambiguous and interpreted the parenthetical as an indication
that the Browns had contemplated future leases and had attempted to make sure
that their royalty interest would never be less than the 1/16 interest under
the current lease, an unambiguous minimum. 
Id. at 946 (McGee, J., dissenting); see also Sharon
Callaway Dittfurth, Common Problems in Conveying Oil and Gas Interests,
13 St. Mary=s L.J. 825, 830
(1982) (describing the difficulty for the drafter post‑Havard).  Justice McGee hinged this analysis on the
words Aheirs
and assigns in perpetuity@ to indicate that the parties
intended to reserve a perpetual royalty and not one coincident only with the
duration of the existing lease on the property and Anot less
than an undivided 1/16th@ to indicate that the Browns
contemplated future leases on the property after the expiration of the current
lease.  Brown, 593 S.W.2d at 946
(McGee, J., dissenting).  Furthermore,
Justice McGee observed the absence of any language to indicate that the royalty
was to be limited to a maximum of, or not more than, 1/16, but also the
presence of specific language that the royalty was to be not less than
1/16.  Id. (McGee, J.,
dissenting).  He noted, ADescribing
a variable amount as being equal to not less than 1/16 has the same result as
describing it as equal to or greater than 1/16,@ and the
absence of a comma between Aequal to@ and Anot less
than@ did not
change that meaning.  Id. (McGee,
J., dissenting). 








There are some differences between the facts in Brown
and the facts in this case: (1) the property in Brown was under lease at
the time that the reservation was made, (2) there was a comma in the Brown
reservation between ABeing equal to@ and Anot less
than,@ and (3)
the grant included the words Ain
perpetuity.@ 
See id. at 940, 942.  Here,
the property had not been leased at the time Bradshaw=s
parents made the reservation, there is no separating comma between the Abeing
equal to@ and Anot less
than@
clauses, and, instead of just the words Ain
perpetuity,@ the 1960 Deeds contain two
additional paragraphs that explain what was granted and indicate what was
intended.

Paragraph One sets out that the grantors reserved
an Aundivided
one-half (1/2) Royalty . . . of all the oil, gas and/or other minerals in, to,
and under or that may be produced@ from
the land.  Without the addition of the
parenthetical this first sentence probably reserved only a fractional royalty
interest.[4]  See id. at 942.  Paragraph Two clarifies that the interest
reserved in Paragraph One is a nonparticipating royalty interest.  








Although no lease existed at the time the
reservation was created, the reservation clearly indicates that leasing was
anticipated: in Paragraph Two, the reservation states that it is unnecessary
for the grantors, heirs, or assigns to join in the execution of any leases and
excludes them from participating in bonuses or rentals Awhich
may be paid to extend the time within which a well may be begun under the terms
of any lease covering said land.@  Paragraph Three also indicates that leasing
was contemplated, stating, A[i]n the
event oil, gas or other minerals are produced . . . then said Grantors . . .
shall receive . . . .@

If the absence of the comma renders only one
possible interpretation of the parenthetical under Brown, i.e., to
reserve 1/2 of the royalties contained in future leases, providing further that
such share must not be less than 1/16, the floor being set by the parenthetical
in Paragraph One, then the reservation is a fraction of royalty.  Brown, 593 S.W.2d at 942.  This conclusion is supported by the dissent=s
reasoning in Brown as well, i.e., the language indicating the
anticipation of leasing in Paragraph Two and the inclusion of the parenthetical
itself in Paragraph One as contemplating future leases.  Id. at 946 (McGee, J.,
dissenting).  Paragraph Two also sets out
that all leases shall provide for a royalty of not less than 1/8Ca floor
that would guarantee that the royalty provided (a fraction of royalty) would
not be less than 1/16.  Finally, the
language in Paragraph Three again includes a parenthetical to explain the
calculation of the not-less-than-1/16 portion of the royalty received by the
grantors, A(being equal to one-half (1/2)
of the customary one-eighth (1/8) Royalty) of the entire gross production and/or
such net proceeds as hereinabove provided . . . .@
[Emphasis added.] This language establishes that what was reserved was a
floating fraction of royalty and not a fixed fractional royalty.








Construing the deeds as a whole, and harmonizing
all parts to give effect to the parties= intent,
we determine that a Afraction of royalty@ was
conveyed.  See Luckel, 819 S.W.2d
at 462.  Paragraph One reserves an
undivided one-half of royalty for Bradshaw, based on the language reserving Aan
undivided one-half royalty,@
interpreted with the parenthetical that immediately follows it, which sets out
that the undivided one-half royalty is Aequal to
not less than an undivided one-sixteent[h] (1/16) of all the oil, gas and/or
other minerals in, to and under or that may be produced,@ and the
clarifying language in Paragraph Three, which states that the grantor shall
receive not less than one-sixteenth portion A(being
equal to one-half (1/2) of the customary one-eighth (1/8) Royalty of the entire
gross production and/or such net proceeds as hereinabove provided . . . .@  We read this language, en toto, as expressing
the intent to establish an interest of a minimum one-sixteenth royalty,
rather than a fixed one-sixteenth Afractional
royalty.@  

In its motion for rehearing, Range cites the
following Texas statutes that use Aequal to
not less than@ to support its argument that
the phrase can denote a fixed amount: section 51.302(a)(4) of the government
code and section 61.0591(a) of the education code.  Range also refers the court to 42 U.S.C.A. ' 608(a)(2)(A)
(West 2003), and Neel v. Oliver=s Estate, 44
A.2d 561, 563 (Pa. 1945), to support its argument that the 1960 Deeds= use of Anot less
than@
indicates a fixed amount.  








However, each of these provisions establishes a
baseline and a method of calculation based on different variables, not a
specific fixed amount.  Section
51.302(a)(4) of the government code, which involves the bond a district clerk
is required to provide before beginning the duties of office, merely states
that the bond must

be in an amount equal
to not less than 20 percent of the maximum amount of fees collected in any
year during the term of office immediately preceding the term of office for
which the bond is given, except that the bond may not be in an amount less
than $5,000 nor more than $100,000. 

 













Tex. Gov=t Code Ann. ' 51.302(a)(4)
(Vernon 2005) (emphasis added).  The statute
itself expressly sets out the bond=s floor
($5,000) and the ceiling ($100,000), and provides for the calculation of
a fixed amount based on the amount collected by a particular districtCthis
amount, needless to say, would vary by county. 
Similarly, Paragraphs One, Two, and Three of the 1960 Deeds establish a
floor for the royalty (one-sixteenth) and provide for the calculation of the
royalty based on a potentially varying amount of production or lease-royalty
size.[5]  The other statutory provisions which Range
cites operate in a similar fashion.[6]  And the case to which Range cites is
inapposite.[7]  See Brown, 593 S.W.2d at 946 (McGee,
J., dissenting) (AA prudent grantor who reserves a
fraction of royalties may wish to ensure that his interest will not fall below
a certain minimum. Careful drafting of royalty reservations requires that he
recognize that future leases may be executed by his grantee that call for a
different royalty than a lease existing at the time of the deed.@). 

Based on the foregoing, we hold that the
reservations in the 1960 Deeds provided for a Afraction
of royalty@ rather than a Afractional
royalty.@  Therefore, we agree with Bradshaw=s
interpretation that the language of the 1960 Deeds permits her to share in
one-half of whatever royalties may be contracted for, and that her resulting
share of production must not be less than one-sixteenth.  This interpretation is consistent with the
plain language of the 1960 Deeds and gives effect to all of the operative
language in the 1960 Deeds so that all of the terms are in harmony.  See Brown, 593 S.W.2d at 942; see
also Luckel, 819 S.W.2d at 462; Altman, 712 S.W.2d at 118.  

 

 

 

 








V. Conclusion

Having determined that the trial court properly
found that the 1960 Deeds provided for a Afraction
of royalty,@ we overrule Range=s three
issues and affirm the trial court=s
partial summary judgment in favor of Bradshaw. 


 

 

 

BOB
MCCOY

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

CAYCE, C.J. filed a
dissenting opinion.

 

DELIVERED: August 14,
2008

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-263-CV

 

 

RANGE RESOURCES CORPORATION                                     APPELLANTS

AND RANGE PRODUCTION, I,
L.P. AND

STEADFAST FINANCIAL, LLC,

R. J. SIKES, KATHY SIKES,

CHRISTY ROME, GREG
LOUVIER,

PAM LOUVIER, AND DACOTA

INVESTMENT HOLDINGS, LLP

AND R. CRIST VIAL

 

                                                   V.

 

BETTY
LOU BRADSHAW                                                         APPELLEE

 

                                              ------------

 

              FROM THE 355TH
DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------








I respectfully dissent.  As a matter of law, the two 1960 deeds at
issue reserved a fixed fractional 1/16th non-participating royalty
interest.  The appellee=s
contention to the contrary requires us to ignore numerous rules of contract
construction, to give no effect to the Abeing
equal to@
language in the deeds, and to imply from the Anot less
than@ phrase
in the deeds a reservation of interest in favor of the grantor that is more
than the plain language of the deeds allows. 
I would, therefore, grant appellants= motions
for rehearing, reverse the trial court=s
partial summary judgment, and render judgment that appellee take nothing on her
claims against appellants.  

 

 

JOHN
CAYCE

CHIEF
JUSTICE

 

DELIVERED: August 14,
2008

 

 











[1]A non-participating
royalty is non‑possessory in that it does not entitle its owner to
produce the minerals himself.  It merely
entitles its owner to a share of the production proceeds, free of the expenses
of exploration and production.  See
Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 789 (Tex. 1995); Luckel
v. White, 819 S.W.2d 459, 463 (Tex. 1991); Hamilton v. Morris Res., Ltd.,
225 S.W.3d 336, 344 (Tex. App.CSan Antonio 2007, pet. denied).





[2]In one deed, the
Driskills conveyed approximately 600 acres to Mitchell & Son, a
partnership.  In the other deed, the
Driskills conveyed approximately 1,173 acres to The Wheatland Retreat,
Inc.  





[3]Steadfast also assigned
portions of its royalty interest to Peter G. Bennis and Roger Sikes. 





[4]However, the Brown
majority did recognize that this language could create either a fractional
royalty or a fraction-of-royalty.  593
S.W.2d at 942. 





[5]That is, the Grantors
reserved Aan undivided one-half
(1/2) royalty (Being equal to not less than an undivided one-sixteent[h]@ of productionCParagraph  One; all leases shall provide for royalty of
not less than one-eighthCParagraph Two; and the
Grantors shall receive not less than one-sixteenth portion A(being equal to one-half
(1/2) of the customary one-eighth (1/8) Royalty) of the entire gross production
and/or such net proceeds as hereinabove provided@CParagraph Three.





[6]Section 61.0591(a) of the
education code is part of the chapter addressing the powers and duties of the
Texas Higher Education Coordinating Board and states that A[t]he legislature shall
appropriate to the board an amount equal to not less than 10 percent of the
total appropriations for base funding of general academic teaching
institutions for the purpose of providing incentive and special initiative
funding under this section.@  Tex. Educ. Code Ann. ' 61.0591(a) (Vernon
2006) (emphasis added).  42 U.S.C.A. ' 608(a)(2)(A)
states, with regard to reduction or elimination of Temporary Assistance to
Needy Families for noncooperation in establishing paternity or obtaining child
support, if the State makes the appropriate findings with regard to
noncooperation and the individual does not qualify for good cause or other
exceptions, then the State 

 

(A) shall deduct from
the assistance that would otherwise be provided to the family of the individual
under the State program funded under this part an amount equal to not less
than 25 percent of the amount of such assistance; and

 

(B) may deny the family
any assistance under the State program.

 

42 U.S.C.A. ' 608(a)(2)(A) & (B)
(emphasis added).  Contrary to Range=s argument that these
provisions set out fixed amounts, they too merely establish a floor and provide
a method of calculating a fixed amount that is dependent on the variables set
out in the statutes. 





[7]In Neel, the
Pennsylvania court had to construe an insurance code provision that
contemplated an assessment liability of an insurance subscriber as Aequal to not less than one additional annual
premium or deposit charged.@  44 A.2d
at 563_64 (emphasis added).  The court concluded that the provision
prescribed the ceiling of a subscriber=s liability for assessment, and not a floor,
based on its Avery evident purpose@ of making certain that
subscribers could not limit the extent of their respective liabilities to
anything less than one additional annual premium or deposit charged.  Id. at 563.  However, this reasoning does not apply here
because the issue is not the limitation of liability (i.e., the amount a
subscriber would have to pay), but rather the amount of payment the grantors
intended to receive from their reservation.















 [COMMENT1]

Majority opinion by Justice McCoy; Dissenting
opinion by Chief Justice Cayce