Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## OPINION

No. 04-11-00752-CV

**SM ENERGY CO.**, Huber Energy, L.P., and Rockford Energy Partners II, LLC,
Appellants

v.

W.H. **SUTTON**, Christopher Sutton, Anita Louise Bell Davies, Janet Lee Smith, Frederick
Jackson Bell, Jr., Julie Mueller, and Arctic Royalty Limited Partnership,
Appellees

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2010-CVF000-835D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Karen Angelini, Justice
               Rebecca Simmons, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  May 23, 2012

REVERSED AND RENDERED

Appellants SM Energy Company, Huber Energy, L.P., and Rockford Energy Partners II,

LLC, (collectively SM Energy) moved for summary judgment to dismiss the appellees' claims

that SM Energy had failed to pay overriding royalty interests (ORRIs) on several oil and gas

leases.  Appellees W.H. Sutton, Christopher Sutton, Anita Louise Bell Davies, Janet Lee Smith,

Frederick Jackson Bell, Jr., Julie Mueller, and Arctic Royalty Limited Partnership (collectively

the Suttons) filed a competing motion for summary judgment asking that the court find their

ORRIs burdened SM Energy's leases and order SM Energy to pay back royalties and interest. The trial court granted the Suttons' motion and SM Energy appealed. We reverse the trial court's judgment and render judgment that the Suttons take nothing.

### BACKGROUND

In 1966, Sutton Producing Corporation leased approximately 40,000 acres from Briscoe Ranch, Inc. for oil and gas exploration and production (the 1966 lease).

#### A. Assignments, ORRIs

About seven weeks after it signed the lease, Sutton Producing assigned its leasehold estate to Kenoil Corporation and three individuals. In the assignment, Sutton Producing reserved an overriding royalty interest of 5.46875% for itself. The assignment contained the following savings provision pertaining to the ORRI:

> Said interest is to apply to all amendments, extensions, renewals or new leases taken on all or a part of the lease premises within one year after termination of the present lease.

In 1978, Kenoil assigned its leasehold interest to a third party and reserved an additional ORRI of 2.00%. Kenoil's assignment also contained a savings clause.

> [The ORRI] is to apply to all amendments, extensions and renewals of the lease or any part of it or to a new lease taken by the Assignee herein or his heirs and assigns on the same lease premises or any part thereof within twelve (12) months after termination of the present lease.

The Suttons claim they are the owners of both ORRIs and the ORRIs burden the 2001 leases (defined below). SM Energy asserts that the ORRIs were extinguished on the released acreage when Crimson Energy released 22,000 acres back to Briscoe Ranch.

#### B. Release Provision

A release provision in the 1966 lease allows the lessee to release all or part of its leasehold estate "and thereby be relieved of all obligations as to the released acreage or interest."

On or before March 31, 2000, Crimson Energy Company L.P., a successor lessee under the 1966 lease, released about 22,000 acres of the original 40,000 acres in the 1966 lease back to Briscoe Ranch. The parties continue to perform under the 1966 lease for the remaining 18,000 acres.

## C. The 2001 Leases

At least one year and one day after the March 2000 release, Crimson Energy signed three new leases (the 2001 leases) with Briscoe Ranch. The 2001 leases covered all of the 22,000 acres surrendered in the March 2000 release. Thereafter, Crimson Energy assigned its leases to Huber Energy; Huber Energy assigned its leases to Rockford Energy; Rockford Energy assigned its leases to SM Energy.

## D. The Present Suit

Sometime in 2009 the Suttons realized they had not been paid for their ORRIs on the 2001 leases. On May 13, 2010, the Suttons sued SM Energy to quiet title in their ORRIs and for the unpaid royalties and prejudgment interest. SM Energy responded that the ORRIs had been extinguished, or that at least some of the claims were barred by limitations, and the Suttons were not entitled to prejudgment interest. The parties filed competing motions for summary judgment. In its September 30, 2011 order and judgment, the trial court granted the Suttons' motion for summary judgment and denied SM Energy's motion for summary judgment. The court ordered that the ORRIs burdened the 2001 leases, determined the discovery rule applies, and awarded royalties and prejudgment interest to the Suttons. In its appeal, SM Energy argues three issues: the ORRIs were extinguished, the claims before May 13, 2006, are barred by limitations, and the Suttons are not entitled to prejudgment interest.

## STANDARD OF REVIEW

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence[,] determine all questions presented[,] . . . [and] render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citations omitted); *accord Howard v. City of Kerrville*, 75 S.W.3d 112, 116–17 (Tex. App.—San Antonio 2002, pet. denied). Construing an unambiguous contract is a question of law which we review de novo. *See Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006); *Alamo Cmty. Coll. Dist. v. Browning Const. Co.*, 131 S.W.3d 146, 155 (Tex. App.—San Antonio 2004, pet. denied).

## OVERRIDING ROYALTY INTERESTS

In its first issue, SM Energy insists that the ORRIs on the 22,000 released acres were extinguished, it does not owe the Suttons any royalties, and the trial court erred by holding otherwise; the Suttons disagree. All parties agree that there are no genuine issues of material fact and the relevant documents are unambiguous.

### A. SM Energy's Argument

SM Energy argues that we should look to the 1966 lease and the assignments and decide that the status of the ORRIs is controlled by two contract clauses viewed in light of Texas law—specifically *Fain* and its progeny. *See Fain & McGaha v. Biesel*, 331 S.W.2d 346, 348 (Tex. Civ. App.—Fort Worth 1960, writ ref'd n.r.e.); *Keese v. Cont'l Pipe Line Co.*, 235 F.2d 386, 388 (5th Cir. 1956). The 1966 lease's release provision allows a lessee to surrender "any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest." A savings clause in each of the assignments applies the

ORRI to new leases, but only those taken within one year "after the termination of the present lease." According to SM Energy, when Crimson Energy released the 22,000 acres, its leasehold estate in the released acreage ended and the ORRIs on the released acreage were extinguished. *See Fain*, 331 S.W.2d at 348. Because the new leases were taken more than one year after the Crimson Energy leasehold estate terminated in the released acreage, the savings clauses do not burden the new leases with the Suttons' ORRIs.

## B.  The Suttons' Argument

The Suttons argue that the language of the assignments should control and the savings clauses apply the Suttons' ORRIs to the 2001 leases. Sutton Producing's 1966 assignment to Kenoil Corporation reads as follows:

> Said interest is to apply to all amendments, extensions, renewals or new leases taken on all or a part of the lease premises within one year after termination of the present lease.

Kenoil's 1978 assignment also contained a savings clause.

> [The ORRI] is to apply to all amendments, extensions and renewals of the lease or any part of it or to a new lease taken by the Assignee herein or his heirs and assigns on the same lease premises or any part thereof within twelve (12) months after termination of the present lease.

The Suttons insist that "termination of the present lease" specified in each of the assignment's ORRI savings clauses can only mean termination of the entire 1966 Briscoe Ranch lease and cannot mean a partial termination such as Crimson Energy's March 2000 release of the 22,000 acres. In the Suttons' view, because the new leases were taken before the entire 1966 lease terminated, the savings clauses apply their ORRIs to the 2001 leases. The Suttons argue that SM Energy has misconstrued *Fain*, *Fain*'s facts are distinguishable, and *Fain*'s only applicability is to affirm the viability of the savings clauses.

**C. Applicable Law**

In Texas, an ORRI does not survive the termination of the leasehold which it burdens absent an express provision to the contrary. *Sunac Petroleum Corp. v. Parkes*, 416 S.W.2d 798, 804 (Tex. 1967) ("Normally, when an oil and gas lease terminates, the overriding royalty created in an assignment of the lease is likewise extinguished."); *EOG Res., Inc. v. Hanson Prod. Co.*, 94 S.W.3d 697, 703 (Tex. App.—San Antonio 2002, no pet.) ("An overriding interest created by assignment does not survive the termination of the assigned lease unless the instrument creating the overriding interest provides an express provision to the contrary."); *Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 603 (Tex. App.—San Antonio 1995, writ denied) (same); *Fain*, 331 S.W.2d at 348 (same). When an agreement is memorialized in more than one document, we must construe them together as a single contract. *EOG Res.*, 94 S.W.3d at 701. We examine the entire agreement between the parties and give effect to each provision so that none is meaningless. *Id.*; *see Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, pet. denied).

**D. Analysis**

The parties agree that the 1966 lease allowed Crimson Energy to release the 22,000 acres back to Briscoe Ranch and that Crimson Energy's leasehold on them ended. The parties disagree on whether the savings clauses apply the ORRIs to the 2001 leases.

*1. ORRIs Extinguished*

SM Energy argues that *Fain* is directly on point, has been adopted by this court, and extinguishes the ORRIs. *See Fain*, 331 S.W.2d at 348.

In *Fain*, the original oil and gas lease for 110 acres authorized the lessee to release any portion of the original lease back to the lessor. *Id.* at 347–48. The lessee released the north sixty

acres but retained the south fifty acres under the original lease. *Id.* at 347–48. The ORRI owners argued that because the lease continued on the south fifty acres, any subsequent lease of the north sixty acres would be burdened by their ORRI. *Id.* at 347. The court rejected their argument. Instead, it reasoned that because the original lease allowed the lessee "at any time to release any portion or portions of the leased premises and be relieved of all obligations as to the acreage surrendered," the ORRI pertaining to the released acreage was necessarily extinguished "unless the instrument creating the overriding or royalty interest as an estate in itself makes express provision to the contrary." *Id.* at 348.

*Fain* applies here. *See EOG Res.*, 94 S.W.3d at 703; *Sasser*, 906 S.W.2d at 603. When Crimson Energy's leasehold on the released acres ended, the Suttons' ORRIs on the released acreage were extinguished. *See Sunac*, 416 S.W.2d at 804; *EOG Res.*, 94 S.W.3d at 703; *Sasser*, 906 S.W.2d at 603; *Fain*, 331 S.W.2d at 348.

### 2. Savings Clauses

The Suttons insist that even though their ORRIs were extinguished the savings clauses apply their ORRIs to the 2001 leases because the 1966 lease was "the present lease" and it has never terminated. To decide the question, we consider the entire 1966 lease and the assignments. *See EOG Res.*, 94 S.W.3d at 701; *Birnbaum*, 48 S.W.3d at 257. The 1966 lease contemplates a partial termination; it expressly provides for the lessee to release "any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest." Further, we presume the parties to the 1966 lease knew that the ORRIs could be easily destroyed. *See Keese*, 235 F.2d at 389 (commenting on "[t]he ease with which oil payments may be destroyed" (quoting A.W. Walker, Jr., *Oil Payments*, 20 TEX. L. REV. 259, 288 (1942))). It was the ORRIs' owners' burden to include an express provision to save their

ORRIs from being extinguished by a partial termination that the lease expressly contemplated. *See id.* In this case, neither of the assignment's savings clauses expressly provides that "termination of the present lease" can only mean termination of the entire lease. Moreover, neither savings clause includes an express provision that reinstates an ORRI on any new lease executed more than one year after the release of the acreage or interest. *See EOG Res.*, 94 S.W.3d at 703 ("An overriding interest created by assignment does not survive the termination of the assigned lease unless the instrument creating the overriding interest provides an express provision to the contrary.").

Considering the applicable law, the 1966 lease in its entirety, and the assignments, we conclude that "termination of the present lease" includes a partial termination. *See EOG Res.*, 94 S.W.3d at 701; *Birnbaum*, 48 S.W.3d at 257. Therefore, the ORRIs were extinguished and they were not saved because the new leases were signed more than one year after the termination of "the present lease" to which the ORRIs pertained. *See Fain*, 331 S.W.2d at 348; *see also EOG Res.*, 94 S.W.3d at 703. We sustain SM Energy's first issue.

## OTHER ISSUES

In its second issue, SM Energy asserts that the discovery rule does not apply to the Suttons' claims and at least some of their claims are barred by limitations. In its third issue, SM Energy asserts that the trial court improperly awarded prejudgment interest. Because we sustained SM Energy's first issue, its second and third issues are moot.

## CONCLUSION

When a lease has a valid contractual provision that allows the lessee to release all or part of the leasehold "and thereby be relieved of all obligations as to the released acreage or interest," an overriding royalty interest that initially burdened the entire lease is extinguished as to the

released acreage or interest unless another contractual provision, such as a savings clause, expressly provides otherwise. *See Sunac*, 416 S.W.2d at 804; *EOG Res.*, 94 S.W.3d at 703; *Sasser*, 906 S.W.2d at 603. The Suttons' ORRIs were extinguished, the savings clauses did not apply, and SM Energy's leases on the 22,000 acres are not burdened by the Suttons' ORRIs.

The trial court erred in granting summary judgment for the Suttons. Therefore, we reverse the final judgment, deny the Suttons' motion for summary judgment, grant SM Energy's motion for summary judgment, and render judgment that the Suttons take nothing on their claims.

Rebecca Simmons, Justice